**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**ROLANDO LOPEZ**                                         **CIVIL ACTION NO.**

**VERSUS**

**QUALITY CONSTRUCTION &**                          **20-250-BAJ-EWD**
**PRODUCTION, LLC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 28, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**ROLANDO LOPEZ**  CIVIL ACTION NO.

**VERSUS**

**20-250-BAJ-EWD**

**QUALITY CONSTRUCTION &
PRODUCTION, LLC, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Second Motion to Remand ("Motion"),[1] filed by Rolando Lopez ("Plaintiff"), which is opposed by C&G Boats, Inc.[2] Because this Court has subject matter jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1), it is recommended[3] that the Motion be denied.

**I.  BACKGROUND**

On April 8, 2020, Plaintiff filed his Original Petition in Louisiana state court, alleging that he sustained injuries in a slip and fall accident on February 23, 2020 aboard the vessel *Ms. Isabella Rose* (the "vessel") on the navigable waters of the Gulf of Mexico.[4] Plaintiff named as defendants Quality Construction & Production, LLC ("Quality"), his employer; and C&G Boats, Inc. ("C&G"), whom he alleged was the owner and/or operator of the vessel.[5] Quality removed the

---

[1] R. Doc. 45.
[2] R. Doc. 46.
[3] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.").
[4] R. Doc. 1-1, ¶ 12. Plaintiff alleged claims under the Jones Act. *See* R. Doc. 1-1, ¶ 3, citing the Jones Act, 46 U.S.C. § 30101, *et seq*., 28 U.S.C. §1333, and *see* 28 U.S.C. § 1445. The date of the Accident was incorrectly alleged to be February 26, 2020 in the Original Petition and Amended Complaint. R. Doc. 1-1, ¶ 9 and R. Doc. 13, ¶ 9. However, Plaintiff states that the accident occurred on February 23, 2020 in a handwritten Witness Statement, that is dated February 26, 2020. *See* R. Doc. 46-3, p. 7.
[5] R. Doc. 1-1, ¶¶ 5-6; 9-11. Plaintiff also named fictitious defendants "ABC Insurance Company" and "XYZ Insurance Company" as the insurers of Quality and C&G, respectively; however, Plaintiff has never amended to allege the identity of either entity. *Id.* at ¶¶ 7-8.

case to this Court with jurisdiction premised on OCSLA.[6] Specifically, Quality alleged that Plaintiff was not a Jones Act seaman, as alleged in the Petition, but, rather a Longshoreman because he "worked for Quality [] to perform services on platforms affixed to the Outer-Continental Shelf of the Gulf of Mexico."[7] In the meantime, C&G, clarified to be the charterer of the vessel, and M N M Boats, Inc., the actual owner of the vessel, filed their Verified Complaint for Exoneration from or Limitation of Liability (the "Limitation action") in the U.S. District Court for the Eastern District of Louisiana.[8] Per that court's Order Directing Issuance of Notice and Restraining Prosecution of Claims, this case was stayed on December 10, 2020.[9] In September 2022, Quality was dismissed from this proceeding on Plaintiff's motion.[10] In March 2023, the case was re-opened because the injunction in the Limitation action was dissolved.[11] Plaintiff then filed the current Motion, contending that this Court lacks OCSLA jurisdiction.[12]

## II.   LAW AND ANALYSIS

### A.  Legal Standards on Removal and OCSLA

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[13] The removal statute is strictly construed

---

[6] R. Doc. 1, ¶ 3, citing 43 U.S.C. § 1333(a)(2)(A) and 43 U.S.C. § 1349(b)(1).
[7] R. Doc. 1, ¶ 4.
[8] *See In Re: In The Matter Of M N M Boats, Inc.*, No. 20-2992 (E.D. La., Nov. 4, 2020), R. Doc. 1.
[9] R. Docs. 20, 21 and No. 20-2992 (E.D. La., Nov. 6, 2020), R. Doc. 10 (also at R. Doc. 20-1 of this case). As a result of the stay and administrative closure of the case, Plaintiff's original Motion to Remand (R. Doc. 8) was terminated.
[10] R. Docs. 23, 28. Plaintiff alleges in opposition to the Motion for Partial Summary Judgment on Seaman Status, filed by C&G, that remand of this case is warranted because all of Quality's claims were dismissed with prejudice in the Limitation action, such that no OCSLA claims are pending in this case. *See* R. Doc. 39, p. 4. As Plaintiff did not raise this argument in connection with the Motion to Remand, it is not reached in this Report.
[11] R. Docs. 33, 34.
[12] R. Doc. 45.
[13] 28 U.S.C. § 1441(a).

and any doubt as to the propriety of removal should be resolved in favor of remand.[14] Remand is proper if at any time the court lacks subject matter jurisdiction.[15]

The removing defendant bears the burden of establishing the basis for removal;[16] in this case, jurisdiction under OCSLA. "OCSLA asserts exclusive federal question jurisdiction over the [outer continental shelf] OCS by specifically extending '[t]he Constitution and laws and civil and political jurisdiction of the United States ... [to the OCS] and all installations and other devices permanently or temporarily attached to the seabed ... for the purpose of exploring for, developing, or producing resources therefrom.'"[17] "The jurisdictional grant in OCSLA is broad, covering a 'wide range of activity occurring beyond the territorial waters of the states.'"[18] Notably, "[b]ecause jurisdiction is invested in the district courts by this statute, '[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply.'"[19] Nor does a plaintiff's failure to plead OCSLA in a state-court petition always bar removal, as claims asserted in state court can provide a basis for removal if they are necessarily federal in nature.[20] In such a case, the court must determine whether the plaintiff's claim concerns issues "intended by Congress to be within the jurisdictional scope of the OCSLA and the federal courts."[21]

---

[14] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008), quoting *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).
[15] *See* 28 U.S.C. § 1447(c).
[16] *See, e.g., In re Deepwater Horizon,* 745 F.3d 157, 162-63 (5th Cir. 2014).
[17] *Barker v. Hercules Offshore, Inc.,* 713 F.3d 208, 213 (5th Cir. 2013), citing 43 U.S.C. § 1332(1) and § 1333(a)(1); *accord id.* § 1349(b)(1); *see also Recar v. CNG Producing Co.,* 853 F.2d 367, 370 (5th Cir. 1988) (acknowledging that the "OCSLA invests [a] district court with original federal question jurisdiction.").
[18] *Barker*, 713 F.3d at 213, citing *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 768 (5th Cir. 2006) *amended on reh'g,* 453 F.3d 652 (5th Cir. 2006) (quoting *Demette v. Falcon Drilling Co.,* 280 F.3d 492, 495 (5th Cir. 2002), *overruled on other grounds by, Grand Isle Shipyard v. Seacor Marine, LLC,* 589 F.3d 778 (5th Cir. 2009) (en banc)).
[19] *In re Deepwater Horizon,* 745 F.3d at 163, citing *Barker,* 713 F.3d at 213.
[20] *Case v. Omega Natchiq, Inc.,* No. 08-835, 2008 WL 2714124, at *10 (S.D. Tex. July 10, 2008)*, citing Gilbreath v. Guadalupe Hosp. Found.,* 5 F.3d 785, 790 (5th Cir. 1993) (quoting *Brown v. Sw. Bell Tel. Co.,* 901 F.2d 1250, 1254 (5th Cir. 1990)).
[21] *Id.* (citations omitted).

Courts have typically assessed jurisdiction under OCSLA using the following test: (1) whether the activities that caused the injury constituted an "operation" "conducted on the outer Continental Shelf" that involved the exploration and production of minerals, and (2) whether the case "arises out of, or in connection with" that operation.[22] The second prong requires application of a 'but for' test, asking whether "the injury would have occurred in the absence of the OCS operation identified in the first prong."[23] The parties agree that a 'but for' test is required by the second prong.[24]

### B. This Court Has Jurisdiction Under OCSLA

<u>Facts Pertinent to the Motion</u>

The circumstances giving rise to Plaintiff's alleged injuries and his employment with Quality are undisputed. Plaintiff was employed as a rigger/fire watcher by Quality to work on an offshore platform.[25] Because the platform did not have lodging accommodations, Plaintiff was required to live on the vessel,[26] chartered by C&G, which was "tied off" to one of the pegs of the platform.[27]

Plaintiff's rigging and fire watching duties were performed in furtherance of his work for Quality, and he testified that Quality sent him to work on the platform and the vessel transported him there.[28] Further, Troy Willis, the HS&E Manager for Quality, attested that Plaintiff was

---

[22] *See In re Deepwater Horizon,* 745 F.3d at 163, citing *EP Operating Ltd. P'ship v. Placid Oil Co.,* 26 F.3d 563, 568-69 (5th Cir. 1994).
[23] *See Par. of Plaquemines v. Total Petrochemical & Ref. USA, Inc.,* 64 F. Supp. 3d 872, 893 (E.D. La. 2014), citing *Tenn. Gas Pipeline v. Houston Casualty Ins.*, 87 F.3d 150, 155 (5th Cir. 1996) (citing *Recar,* 853 F.2d at 369).
[24] R. Doc. 45-1, p. 14; R. Doc. 46, p. 6.
[25] R. Doc. 45-1, pp. 1-2 ("Mr. Lopez was gravely injured in the course and scope of his employment with Quality … [which] was retained to perform services on a platform affixed to the Outer Continental Shelf ("OCS")."); R. Doc. 46, p. 2; R. Doc. 46-2, pp. 15-16.
[26] R. Doc. 45-1, p. 2; R. Doc. 46-3, p. 3, ¶ 11. According to C&G, the vessel provided transportation and lodging to Plaintiff and his Quality co-workers because the platform lacked lodging accommodations. R. Doc. 46, pp. 1-2.
[27] R. Doc. 46-2, pp. 8-9. According to Plaintiff, the vessel was "right up on [the platform]," and as there was four feet between the vessel and the platform, the workers would swing over from the platform to the vessel. *Id.*
[28] R. Doc. 46-2, p. 14.

Quality's employee, who was assigned to work on the platform and not for the vessel.[29] Plaintiff specifically testified that he did not perform any duties as part of the vessel's crew, such as navigating or mooring the vessel.[30] That said, some of Plaintiff's rigging work for the platform took place on the back deck of the vessel, such as when the welders cut grating, which Plaintiff would rig to a rope to transport to the platform.[31]

Ultimately, Plaintiff suffered an injury[32] while aboard the vessel, which Plaintiff characterizes as follows:

> To be clear, QCP was retained to perform certain services on a platform affixed to the Outer Continental Shelf ("OCS"). But Mr. Lopez was injured ***off-duty***, while being—not on the OCS—but onboard the ISABELLA ROSE that was used as sleeping quarters and galley. So, as he was entering into the mess hall onboard the vessel in his off-duty status, Mr. Lopez slipped and fell…."[33]

<u>Arguments Regarding the First Prong</u>

Plaintiff argues that C&G cannot meet the first prong of the OCSLA jurisdictional test—that Plaintiff was involved in any operation, *i.e.*, personally engaged in the exploration, development, and production of minerals, while on the OCS.[34] Taking each of these components in turn, Plaintiff alleges he cannot be considered to have performed any "operation," interpreted to mean "the doing of some physical act," for the purposes of OCSLA because he was off-duty at the time of the accident.[35] Further, at the time of his injury, Plaintiff was on the vessel, not on the

---

[29] R. Doc. 46-3, pp. 2-4.
[30] R. Doc. 46, p. 2, and R. Doc. 46-2, pp. 8-9, 14-18.
[31] R. Doc. 46-2, p. 15; R. Doc. 46-1, p. 3 (deposition of Raymond J. Pickney, HSE advisor with Tiger Safety, a Talos contractor (*see* No. 20-2991, (E.D. La. Sept. 8, 2022), R. Doc. 108, p. 27 (proposed Pretrial Order identifying Pickney)).
[32] According to Plaintiff, as he was "making [his] way back into the Boat," he slipped on aluminum steps and hit his right chin and leg. Plaintiff held onto the boat's door, which swung open and pulled his right arm back and dislocated his shoulder. Plaintiff then hit the boat's wall with his back, which relocated his shoulder. R. Doc. 46-3, p. 7.
[33] R. Doc. 45-1, p. 2 (emphasis in original).
[34] R. Doc. 45-1, pp. 4-6, 9-13.
[35] R. Doc. 45-1, pp. 5, 10, 13. "Operation" is not defined in the OCSLA, but the Fifth Circuit has interpreted it to mean "the doing of some physical act." *Par. of Plaquemines,* 64 F.Supp.3d at 893, citing *Tenn. Gas*, 87 F.3d at 154 (quoting

5

OCS, so Plaintiff argues that his injury was unrelated to the platform or the OCS.[36] Finally, Plaintiff contends that his injury was unrelated to the exploration, development, and production of minerals, which involves "'the processes involved in searching for minerals on the OCS; preparing to extract them by, inter alia, drilling wells and constructing platforms; and removing the minerals and transferring them to shore.'"[37] According to Plaintiff, the relevant inquiry is "[t]he 'nature of the activities that caused [Plaintiff's] [] injury," which in this case involved Plaintiff walking to the mess hall for a snack and is unrelated to the exploration of minerals.[38] C&G disagrees, contending that the elements of the first prong are met because the underlying accident and mineral operations occurred on the OCS and Plaintiff's employment furthered mineral development on the OCS through his maintenance work on the platform. C&G further contends that the fact Plaintiff was off duty at the time the accident occurred is irrelevant.[39]

Arguments Regarding the Second Prong

While Plaintiff argues that further inquiry is unnecessary because C&G cannot satisfy the first prong, he claims that C&G also cannot meet the second prong, *i.e.*, the 'but for' test of "whether the dispute 'arises out of, or in connection with' the OCS operation" from the first prong."[40] Plaintiff contends that, not only can C&G not show an "operation" on the OCS, but it cannot show that 'but for' the OCS operation, Plaintiff's injury would not have arisen because anyone could have fallen on the vessel regardless of their circumstances and its location.[41] In other

---

*Amoco Prod. Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202, 1207 (5th Cir. 1988)). The term "operation" is broadly construed because it is used in conjunction with the terms "exploration," "development," and "production," all of which are broadly defined in OCSLA, and encompass the full range of oil and gas activity. *Par. of Plaquemine,* 64 F.Supp.3d at 893, citing *EP Operating,* 26 F.3d at 568 & n.12 (citing 43 U.S.C. § 1331(k)–(m)).

[36] R. Doc. 45-1, pp. 5, 10-11, 13. C&G does not dispute that Plaintiff was off duty and on the vessel at the time of his injury. R. Doc. 46, pp. 9, 11 and R. Doc. 46-3, p. 4.
[37] R. Doc. 45-1, pp. 6, 11-13, citing *Par. v. Exxon Mobile Corp.,* No. 13-6717, 2015 WL 4097111, at *14 (E.D. La. July 7, 2015) (other citations omitted).
[38] R. Doc. 45-1, p. 6.
[39] R. Doc. 46, pp. 7-12.
[40] R. Doc. 45-1, p. 7, citing *Par. of Plaquemines,* 64 F. Supp. 3d at 893.
[41] R. Doc. 45-1, pp. 14-15.

6

words, the mere fact that the vessel was in use for the workers performing services on the OCS does not confer jurisdiction.[42]

Though acknowledging the 'but for' test is broadly interpreted, Plaintiff argues that it is not limitless. Plaintiff disagrees with C&G's argument that OCS operations were a 'but for' cause of Plaintiff's accident because Plaintiff would not have been aboard the vessel had he not been employed by Quality and had Quality not been retained to work on the OCS.[43] Finally, Plaintiff contends that the relationship between his injuries and the activities that caused them is too remote under the law,[44] and it is "too long of a stretch" to find that any OCS operation was a 'but for' cause of Plaintiff's accident.[45]

### 1. The Activities that Caused Plaintiff's Alleged Injuries Constituted an "Operation" "Conducted on the OCS" which involved the "Production of Minerals"

The OCS-affixed platform was engaged in the "operation" of developing and/or producing oil and gas at the time of Plaintiff's injury. It is undisputed that the platform was a "Talos Energy" platform in the Gulf of Mexico at "EC-355-A," which was engaged in the production of oil and gas,[46] and that Plaintiff's routine work for Quality involved rigging scaffolding or grating materials in between the back deck of the vessel to the platform, or fire watching the welders while on the

---

[42] R. Doc. 45-1, pp. 7, 15-16.
[43] R. Doc. 45-1, p. 15, citing *Fairfield Indus., Inc. v. EP Energy E&P Co., L.P.,* No. 12-2665, 2013 WL 12145968, at *4 (S.D. Tex. May 2, 2013) and *see* R. Doc. 46, pp. 10-11.
[44] R. Doc. 45-1, pp. 7, 16, citing *Landry v. Island Operating Co. Inc.,* No. 09-1051, 2009 WL 3241560, at *4 (W.D. La. Sept. 30, 2009) and *Stutes v. Gulfport Energy Corp.,* No.16-1253, 2017 WL 4286846, at *11 (W.D. La. June 30, 2017).
[45] R. Doc. 45-1, pp. 7, 15.
[46] R. Doc. 46-3, pp. 2-3 and *see* R. Doc. 46-2, p. 15 (Plaintiff's testimony about working on the platform), and R. Doc. 46-3, p. 7 (Plaintiff's handwritten safety report on a "Talos Energy Witness Statement" form). R. Doc. 46, p. 7 ("Regarding the mineral operations, it is undisputed that Lopez's employment with QCP involved maintenance and construction, including removal and replacement of metal grating and other components of an oil platform that was permanently affixed to the seabed in the Gulf of Mexico.") and *id.* at pp. 9-10.

platform, in the course of maintenance of the platform's grating and handrails.[47]  Maintenance of a platform has been held to fall under "production" of minerals for the purpose of § 1349(b)(1).[48]  Therefore, the "operations" element is met by virtue of the platform's activities on the OCS, which Plaintiff helped maintain.  Plaintiff misstates the "operations" component, as requiring "that the plaintiff's injury constituted an operation…."[49]  Curiously, Plaintiff relies on *Hebert v. Smith*, in which the court found OCSLA subject matter jurisdiction for a suit arising out of the crash of a helicopter that was attempting to transport passengers between offshore platforms, stating "[b]ecause Ship Shoal 130E was an 'oil' platform that was being accessed by personnel at the time of the accident, there clearly was an operation that involved "exploration, development, or production" of minerals. Applying a broad 'but for' test, we readily conclude that the accident arose out of oil operations on the outer continental shelf."[50]  Contrary to Plaintiff's contention, a party does not have to be engaged in the exploration, development, or production of minerals at the exact time of their injuries for OCSLA jurisdiction to attach.[51]

---

[47] R. Doc. 46-2, p. 15.  The welders cut grates and scaffolding materials on the vessel, which Plaintiff would rig with a rope to transport to the platform.  Plaintiff would also fire watch while the welders welded steps on the platform.  Thus, the workers were engaged in repairing/replacing parts of the platform. Plaintiff was also responsible for good housekeeping of Quality's tools and the work area. *Id.* at pp. 15-16.  *See also* R. Doc. 46, p. 9.

[48] This is by application of 43 U.S.C. § 1331(m)'s definition of "production." *See Recar,* 853 F.2d at 369 ("Section 1331(m) provides further that "the term 'production' means those activities which take place after the successful completion of any means of the removal of mineral including ... maintenance...."). At the time of his injury, the *Recar* plaintiff was the foreman of a maintenance crew engaged in painting and repairing production platforms which were built and maintained for the purpose of producing oil and gas from wells.

[49] R. Doc. 45-1, p. 9.

[50] No. 05-2226, 2006 WL 8456144, at *2 (W.D. La. Mar. 15, 2006) (emphasis added), citing *Tenn. Gas*, 87 F.3d at 154-55 and *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982) (but for the rig's operations, the decedent would not have been on the helicopter). Contrary to Plaintiff's argument, *In re Deepwater Horizon,* 745 F.3d at 163, does not provide support for the proposition that Plaintiff had to be personally engaged in mineral production at the time of the injury. R. Doc. 45-1, p. 5.  Rather, in that case, the Fifth Circuit reaffirmed that the OCSLA only requires a 'but for' connection to establish jurisdiction. *Id.*

[51] Nor does Plaintiff's off-duty status control whether OCSLA jurisdiction exists.  OCSLA jurisdiction has been upheld in cases involving employees injured while transferring between vessels and platforms, who are not noted to be directly performing their operational duties when injured.  R. Doc. 46, pp. 11-12.  *See Landerman v. Tarpon Operating & Dev., L.L.C.,* 19 F. Supp. 3d 678, 681 (E.D. La. 2014) (upholding OCSLA jurisdiction where the plaintiff, a welder on an OCS platform, was injured when being transferred by crane basket from the platform to the vessel where he was lodging when the basket was placed on top of the vessel's equipment and tipped over, which caused the plaintiff to fall to the vessel).  *See also Recar,* 853 F.2d at 368 (upholding OCSLA jurisdiction over foreman's accident that

Nor is there any viable argument that the operations were conducted other than on the OCS.[52] Plaintiff's authority is distinguishable as involving onshore activities, or activities that otherwise did not occur on the OCS. In the cited trio of related cases *Plaquemines Par. v. June Energy, Inc.*,[53] *Par. of Plaquemines v. Total Petrochemical & Ref. USA, Inc.*,[54] and *Par. v. BEPCO, L.P.*,[55] the court found that the OCSLA situs requirement was not met because all the exploration, production, and transportation activities complained of occurred in the Louisiana Coastal Zone and/or in Plaquemines Parish; not on the OCS. The court found similarly in *Stutes*, holding that none of the complained-of oil and gas activities occurred on the OCS; rather, they took place in Vermillion Parish.[56] In *Fairfield Indus., Inc.*, the court found that "the disputed agreements lack the connection to a physical act on the OCS."[57] In *Targa Midstream Servs. LLC v. Crosstex Processing Servs. LLC,*[58] and *Plains Gas Solutions, LLC v. Tenn. Gas*, the court found that the operations that caused the alleged injuries occurred onshore.[59] In *Landry,* the plaintiff's injuries occurred on land.[60] Finally, in *Herb's Welding v. Gray*, the Fifth Circuit held that the plaintiff's injury "happened on a platform that produced oil from the territorial seabed, not that of the shelf…."[61] In other words, not on the OCS.

---

occurred when the rope broke while he was swinging from the platform to the vessel where the maintenance crew slept and ate); *see also, Hebert*, above.

[52] C&G additionally argues that, while not dispositive, courts have held that "when ... an individual is 'physically connected' to an offshore platform at the time of the accident giving rise to the suit, the OCSLA situs requirement is satisfied," which is met here because the vessel was moored to the platform. R. Doc. 46, pp. 7-9, and *see Hicks v. BP Expl. & Prod., Inc.,* 308 F.Supp.3d 878, 883 (E.D. La. 2018) (both citing *Landerman*, 19 F. Supp. 3d at 683). It is undisputed that the vessel on which Plaintiff suffered his injury, and sometimes performed work duties, was moored to the OCS-affixed platform that Plaintiff was hired to maintain.

[53] R. Doc. 45-1, p. 11, n.41, citing No. 13-6712, 2015 WL 3404051, at *4 (E.D. La. May 26, 2015).

[54] 64 F.Supp.3d 872, 894-95 (E.D. La. 2014).

[55] No. 13-6704, 2015 WL 4097062, at *14 (E.D. La. July 7, 2015).

[56] 2017 WL 4286846, at *9-10.

[57] 2013 WL 12145968, at *4-5.

[58] No. 14-2256, 2014 WL 12672258, at *6 (S.D. Tex. Nov. 25, 2014).

[59] 46 F.Supp.3d 701, 706 (S.D. Tex. 2014). The court also found that most of the alleged acts were not physical acts and thus not "operations," and further, the dispute did not involve the development or production of minerals. *Id.*

[60] 2009 WL 3241560, at *3-4. The court also found that the plaintiff's injuries were not caused 'but for' OCS-related activities.

[61] 766 F.2d 898, 900 (5th Cir. 1985), and the plaintiff's injuries were not caused 'but for' OCS-related activities. *Id.*

### 2. *Plaintiff's Alleged Injuries Would Not Have Occurred 'But For' His Employment*

As to the second prong of the jurisdictional test, the correct inquiry is whether "the plaintiff's injury would not have occurred but for his employment."[62] In this case, but for Plaintiff's job duties maintaining the platform, which furthered mineral production, he would not have been on the vessel where he was injured, performed some of his job duties, and was living. Stated another way, Plaintiff would not have been injured but for his employment with Quality to work on the platform, which satisfies the second prong. Plaintiff's argument that the connection between his injury and the OCS operations is too attenuated fails considering similar cases.

In *Recar v. CNG Producing Co.*, the plaintiff/foreman oversaw repairs and maintenance of OCS platforms in the Gulf of Mexico, and he and his crew ate and slept aboard a vessel that also transported them from platform to platform. On the date of his accident, the plaintiff was swinging from the platform to the vessel when the rope broke, causing the plaintiff to fall to the vessel's deck and injure his neck. The Fifth Circuit upheld OCSLA jurisdiction, despite that the plaintiff's injuries occurred on the vessel and although they occurred when he was not specifically engaged in his foreman duties, because the plaintiff would not have been injured but for his work on the platform.[63] *See also Hicks,* in which a platform worker was injured while being transferred from the platform, in a basket connected to a crane on the platform, to the vessel where he was living:

> Applying the 'but-for' test to the undisputed facts, the Court concludes that OCSLA jurisdiction extends to plaintiffs' tort action. As a contract rig electrician on the MAD DOG—an oil and gas spar platform on the OCS—Hicks' employment undoubtedly furthered mineral development on the OCS. In addition, Hicks would not have

---

[62] *Barker,* 713 F.3d at 212-13 (upholding OCSLA jurisdiction over the plaintiff's claim for damages after watching a co-worker die as a result of an accident on a jack-up rig attached to the OCS, and stating "it is clear that but for his employment, [the plaintiff] would not have been involved in the incident forming the basis of the this suit.") and *see Guillotte v. Energy Partners Ltd.,* No. 06-671, 2008 WL 828052, at *2 (S.D. Tex. Mar. 26, 2008) ("The proper inquiry in such cases is whether the worker's employment furthered mineral development and whether "but for" that employment, the worker would not have been injured.").
[63] 853 F.2d 367-68 (5th Cir. 1988).

suffered his alleged injury but for his employment on the offshore platform."[64]

As found in *Hicks*, the fact that Plaintiff was not directly engaged in his rigger/ fire watch duties on the platform at the exact moment of his injury is not dispositive.[65] Plaintiff's accident arose out of his employment with Quality, performing maintenance on a platform engaged in the production of minerals on the OCS, which required his presence on the vessel for lodging as well as to perform some work duties.

As C&G has provided sufficient information to establish both prongs of the applicable test, the Court has jurisdiction under OCSLA.[66]

## III.    RECOMMENDATION

After applying the two-part test for OCSLA jurisdiction, C&G has established that, 'but for' Plaintiff's job duties as a rigger/fire watcher hired to maintain a platform affixed to the OCS engaged in mineral production, he would not have been on the vessel where he was injured, which was moored to the platform. As such, the Court has subject matter jurisdiction pursuant to the OCSLA.

---

[64] *Hicks,*, 308 F. Supp. 3d at 881-82, 884, citing *Recar*, 853 F.2d at 369 and *Barker*, 713 F.3d at 213 ("[I]t is clear that but for his employment, Barker would not have been involved in the incident forming the basis of this suit."); *Hufnagel v. Omega Serv. Indus. Inc.,* 182 F.3d 340, 350 (5th Cir. 1999) ("But for Hufnagel's work on the platform, his injury would not have occurred."); *Tenn. Gas,* 87 F.3d at 155 (concluding that the "but-for" test was satisfied and OCSLA jurisdiction existed where "[a]n ocean-going vessel ... allided with a platform secured to the outer continental shelf some 35 miles off the coast of Louisiana," *id.* at 152, because "there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS," *id.* at 155).
[65] *Id.* While Plaintiff argues that the "operational" inquiry should be confined to the physical acts that Plaintiff was engaged in at the moment of his fall (R. Doc. 45-1, pp. 5, 10), the cited authority establishes that the relevant inquiry is not so narrowly drawn.
[66] While C&G argues that Plaintiff should be precluded from asserting Jones Act seaman status as a basis for remand (R. Doc. 46, pp. 13-17), the issue is not reached here Plaintiff did not assert Jones Act seaman status as a basis for remand in the current Motion, as he did in his earlier Motion to Remand. R. Doc. 8-2, pp. 2-6.

Accordingly,

**IT IS RECOMMENDED** that the Second Motion to Remand,[67] filed by Plaintiff Rolando Lopez, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that this matter be referred for a scheduling conference before the undersigned.

Signed in Baton Rouge, Louisiana, February 28, 2024.

                                          **ERIN WILDER-DOOMES**
                                          **UNITED STATES MAGISTRATE JUDGE**

---

[67] R. Doc. 45.