UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ROLANDO LOPEZ**    CIVIL ACTION

**VERSUS**

**QUALITY CONSTRUCTION &
PRODUCTION, LLC. ET AL.**    NO. 20-00250-BAJ-EWD

## RULING AND ORDER

Before the Court is Defendants' **Motion For Final Summary Judgment on Plaintiff's Remaining Claims (Doc. 106).** The Motion is opposed. (Doc. 113). Defendants filed a Reply Brief. (Doc. 116). For the following reasons, Defendants' Motion is **DENIED.**

I.   **BACKGROUND**

This case arises out of Plaintiff's alleged slip and fall aboard a vessel. The following facts are undisputed, as set forth in Defendants' Statement of Material Facts (Doc. 106-7), Plaintiff's Response to Statement of Material Facts (Doc. 114), and Defendants' Reply Statement of Material Facts (Doc. 117).

In February 2020, Plaintiff worked on a platform moored to the vessel *Ms. Isabella Rose* as a rigger.[1] (Doc. 113 at 5–6). While working on the platform,

---

[1] According to the Occupational Health and Safety Administration, "[r]iggers prepare ships' equipment, components or sections for lifting by cranes, hoists or other material handling equipment. Riggers also act as signalman." U.S. DEP'T OF LABOR, OCCUPATIONAL SAFETY & HEALTH ADMIN., SAFETY AND HEALTH INJURY PREVENTION SHEETS: RIGGING, https://www.osha.gov/sites/default/files/rigging_ships.pdf.

Plaintiff ate and slept aboard the vessel *Ms. Isabella Rose*. (Doc. 106-7 at p. 4). Plaintiff's employer was Defendant Quality Construction & Production, LLC ("Quality Construction").[2] (*Id.* at p. 3).

The alleged accident occurred as follows. "[Plaintiff] allegedly slipped and fell aboard the vessel on a wet exterior step leading from the back deck of the boat to the galley/passenger area on what he believes was water or humidity," not a foreign substance. (*Id.* at 8–9). Plaintiff was allegedly holding a door handle with his right hand and the doorframe with his left hand when he slipped. (*Id.* at 10). "The exterior step [Plaintiff] allegedly slipped on was made of a 'diamond plate' metal tread surface." (*Id.* at 11). Plaintiff took pictures on his cell phone of both the exterior step and interior step of the vessel, which show that the steps were indeed made of this diamond plate metal tread, which is "commonplace and standard equipment on offshore vessels in the Gulf of Mexico." (*Id.* at 12–13).

Plaintiff was off duty at the time of the alleged accident. (Doc. 106-7 at 6). "The performance of [Plaintiff's] work [] necessitated that he eat and sleep onboard a vessel, the *Ms. Isabella Rose*, on which he would use its bunk and mess facilities." (*Id.* at p. 4).

The *Ms. Isabella Rose* is a U.S. Coast Guard Inspected vessel. (*Id.* at 19–20). Plaintiff's liability expert does not assert that the vessel violated any U.S. Coast Guard standard, regulation, or guideline in the design or makeup of the exterior step at issue. (*Id.*). The vessel's doorway where the alleged accident occurred, however,

---

[2] Quality Construction has been dismissed from this case. (Doc. 28).

lacked a handrail. (Doc. 114 at 25).

In the operative Complaint, Plaintiff asserts the following claims: (1) vessel negligence under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 905(b); and (2) general maritime law negligence. (Doc. 59).

## II.  PROCEDURAL HISTORY

On April 6, 2020, Plaintiff filed suit in state court against the following named Defendants: (1) Quality Construction, Plaintiff's employer; (2) C&G Boats, Inc. ("C&G Boats"), the alleged vessel owner or operator; and (3) the companies' yet to be identified insurers, ABC Insurance Company and XYZ Insurance Company, respectively. (Doc. 1-1). On April 28, 2020, Defendants removed the case to this Court, asserting federal question jurisdiction. (Doc. 1).

On September 2, 2022, the Court granted Plaintiff's Unopposed Motion for Partial Dismissal of Quality Construction and its insurer ABC Insurance Company. (Doc. 28). Thus, the Court dismissed these Defendants from this case, with prejudice. (Doc. 28).

On March 27, 2024, the Court granted C&G Boats' Motion for Partial Summary Judgment on Seaman Status and dismissed Plaintiff's Jones Act unseaworthiness claims. (Doc. 52). Thus, Plaintiff's only remaining claims include negligence under LHWCA § 905(b) and general maritime law negligence. (*Id.*). Thereafter, Plaintiff filed a Second Amended Complaint (Doc. 59), adding Defendant M N M BOATS, INC. ("M N M BOATS") to the case as the alleged vessel owner. (*Id.* at 8).

3

Now, Defendants C&G Boats and M N M BOATS move for summary judgment, asserting that they did not owe a duty to Plaintiff under LHCWA § 905(b) and that they did not breach a duty. (Doc. 106). Defendants further assert that Plaintiff's remaining claims do not amount to negligence. (*Id.*). Plaintiff opposes the Motion. (Doc. 113). For the following reasons, Defendants' Motion (Doc. 106) is **DENIED**.

### III.   LEGAL STANDARD

#### A. Summary Judgment.

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

4

In resolving a motion for summary judgment, "the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### B. Vessel Negligence under LHWCA § 905b.

To prevail on a vessel negligence claim under the LHWCA, a longshoreman must prove that a vessel owner breached at least one of three narrow duties owed. *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156 (1981). These include: "(1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene." *Kirksey v. Tonghai Mar.,* 535 F.3d 388, 391 (5th Cir. 2008). These standards assume, however, that an "expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." *Scindia,* 451 U.S. at 167.

### C. General Maritime Law Negligence.

"General maritime law applies 'general principles of negligence law to tort actions.'" *Humphrey v. Tidewater GOM, Inc.,* 616 F.Supp.3d 538, 544 (M.D. La. 2022) (deGravelles, J.) (quoting *Deperrodil v. Bozovic Marine, Inc.,* 842 F.3d 352, 356 (5th Cir. 2016) (cleaned up)). To state a claim for negligence under maritime law, Plaintiff must first demonstrate that there was a duty owed by Defendants to

5

Plaintiff, a breach of that duty, an injury sustained by Plaintiff, and finally a causal connection between Defendants' conduct and Plaintiff's injury. *See In re Great Lakes Dredge & Dock Co.* LLC, 624 F.3d 201, 211 (C.A.5 (La.), 2010), citing *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d, 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)) (alteration in original). "Generally, the question of negligence in a maritime case is a question of fact for the factfinder." *Gusman v. Archer Shipping, Ltd.,* 553 F.Supp.3d 315, 320 (E.D. La. 2021) (internal quotation marks removed).

## IV. DISCUSSION

Defendants move for summary judgment, arguing that Plaintiff "has no claim for general maritime negligence or gross negligence allegedly caused by wet surfaces and other conditions inherent to work at sea[.]" (Doc. 106-1 at 8). Defendants also assert that "there is no genuine issue of material fact supporting any duty owed to [Plaintiff] under these circumstances, or any duty breached by [Defendants] such that the [D]efendants are entitled to judgment as a matter of law." (*Id.*).

Plaintiff opposes the Motion, arguing that "Defendants breached both the 'active control' duty, as well as the 'turnover duty,' by failing to warn about or remedy the unreasonably defective means of access/egress to the galley" where Plaintiff slipped. (Doc. 113 at 4). Plaintiff further contends that sufficient evidence establishes that Defendants did not exercise reasonable care under the circumstances. *Id.*

The parties appear to disagree regarding the nature of the duty Defendants owed Plaintiff. Defendants argue that, as a longshoreman, Plaintiff's exclusive

6

remedy for vessel negligence lies under LWHCA § 905(b), a more restricted standard than general maritime negligence. (Doc. 106-1 at 22). Defendants contend, however, that even if general maritime negligence law applies, the Court should still grant summary judgment in their favor. (*Id.* at 26).

In his Second Amended Complaint, Plaintiff asserts claims of both vessel negligence under LHWCA § 905(b) and general maritime negligence. (Doc. 59). It is not clear from Plaintiff's opposition brief which standard he believes should apply, but he asserts that under either standard, Defendants breached their duties to Plaintiff. (Doc. 113 at 10).

For purposes of the instant motion, it is not necessary for the Court to determine which standard applies. Regardless of the standard applied, the Court finds that there are genuine issues of material fact which make summary judgment inappropriate under either general maritime law negligence or a theory of negligence under LHWCA § 905(b). *See Humphrey v. Tidewater GOM, Inc.,* 616 F.Supp.3d 538, 546 (M.D.La. 2022) (deGravelles, J.) (finding that regardless of the parties' dispute regarding which liability standard applied, "there [were] questions of fact which [made] summary judgment inappropriate under either general maritime law negligence or 905(b) negligence.").

### A. Issues of Fact Preclude Summary Judgment Regarding Whether Defendants Breached *Scindia* Duties.

In *Scindia*, the U.S. Supreme Court narrowed the duties owed by vessel owners to longshoremen into three categories: (1) turnover duty; (2) active control duty; and (3) duty to intervene. 451 U.S. 156 (1981). Defendants contend that Plaintiff has no

7

claim under any of the *Scindia* duties. (Doc. 106-1 at 23–26). Plaintiff disagrees, arguing that Defendants breached both the turnover and active control duties. (Doc. 113 at 4). The duty to intervene is not at issue.

### 1. The Turnover Duty.

The turnover duty is twofold. First, the vessel owner "owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on his stevedoring operations with reasonable safety."[3] *Kirksey v. Tonghai Mar.,* 535 F.3d 388, 392 (5th Cir. 2008). Second, a vessel owner must warn of latent or hidden dangers which are known or should have been known to it, exclusive of dangers which are open and obvious or which a reasonably competent stevedore should anticipate encountering. *Id.*

Here, Defendants contend that because "there are no hidden defects alleged" in this case and the "humidity or seawater" on the step was "a product of the open and obvious work environment," Plaintiff cannot meet his burden to prove a breach of the turnover duty. (Doc. 106-1 at 24–25).

Plaintiff disagrees, arguing that Defendants breached the turnover duty because the "stairway at issue was 1) constructed only of diamond-plate, and 2) lacked a handrail," creating a hidden or latent defect that Defendants knew or should have known about. (Doc. 113 at 15). Plaintiff relies on U.S. Court of Appeals for the Fifth Circuit precedent to argue that Defendants should have known of the defect, and even if the defect is "open and obvious," Plaintiff may still recover because

---

[3] Stevedore is another word used to refer to longshoremen. *See, e.g.,* https://www.merriam-webster.com/dictionary/stevedore.

8

there was no practical alternative to Plaintiff traversing the allegedly defective stairway. (Doc. 113 at 14). *See Greenwood v. Societe Francaise De,* 111 F.3d 1239, 1245 (5th Cir. 1997) (shipowners are deemed to have actual knowledge of dangerous conditions if condition existed from the outset [of the job]); *Moore v. M/V ANGELA,* 353 F.3d 376, 381 (5th Cir. 2003) (the open and obvious exception "does not apply if the longshoreman's only alternatives to facing the hazard are unduly impracticable or time-consuming or would force him to leave the job.").

At bottom, the parties disagree regarding whether the condition of the stairway was defective such that Defendants breached the turnover duty. Plaintiff submits his own deposition testimony as well as reports and deposition testimony from his proffered expert, Dr. Andres, to raise questions about whether the step was unreasonably slippery and whether the lack of handrail created an unreasonably dangerous condition.[4] (*See* Doc. 113-1; Doc. 113-10; Doc. 113-11). For example, Plaintiff's expert, Dr. Andres, asserts in his expert report that diamond plating is not adequately slip resistant and that the lack of a handrail compounded the hazard because Plaintiff did not have adequate means to arrest his fall. (Doc. 113-11 at 13).

The weight to afford this testimony and whether the condition of the area ultimately amounted to a breach of Defendants' duty is for the finder of fact, in this case, a jury, to determine. Because Plaintiffs' proffered evidence could support a finding by a reasonable jury that the galley entryway was unreasonably unsafe or

---

[4] The Court notes that Dr. Andres' opinion is the subject of a Daubert Motion. (Doc. 76). For reasons to follow, Defendants' Daubert Motion and Motion in Limine to Exclude or Limit the Testimony of Robert Andres, Ph.D. (Doc. 76) will be denied.

9

defective, the Court finds that summary judgment on this issue is not appropriate.

## 2. The Active Control Duty.

"A vessel also has a duty to 'exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'" *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 434 (5th Cir. 2012) (quoting *Howlett v. Birkdale Shipping, Co., S.A.*, 512 U.S. 92, 98 (1994)).

Whether Defendants were in active control of the area of the vessel where Plaintiff was injured remains a highly contested issue between the parties. Defendants contend that they were not exercising active control over the area of Plaintiff's injury at the time of said injury because they "did not issue any orders or directions to [Plaintiff] to engage in any specific work practices; did not provide any of the personnel, tools or equipment used in [Plaintiff]'s work and did not exercise supervision or control over [Plaintiff] during his work or otherwise." (Doc 106-1 at 25).

However, Plaintiff provides evidence to credibly call this contention into question. For instance, Plaintiff testified that only the back deck, not the galley in which the incident occurred, was included in his area of his assigned work. (Doc. 113 at 12). He also points to his employer's contract with Defendants which outlines that "the whole of each Vessel shall be under owner's sole control" and that the owner remains responsible to maintain the vessel. (*Id.*). Testimony from other crewmembers also supports that Defendants exercised active control over the vessel by "making sure the boat was in good shape and working properly" and that a deckhand under

10

control of Defendants took measures to remedy the allegedly slippery step. (*Id.* at 13).

The Court finds that a genuine issue of material fact precludes summary judgment. A reasonable jury could find that Defendants were in active control of this area of the vessel at the time of Plaintiff's injury, and, coupled with other evidence described herein, that Defendants breached the active control duty. Accordingly, summary judgment on this issue is not appropriate.

### B. Issues of Fact Preclude Summary Judgment Regarding Whether Defendants Breached Duties Under General Maritime Negligence Law Principles.

"Generally, the question of negligence in a maritime case is a question of fact for the factfinder." *Gusman v. Archer Shipping, Ltd.*, 553 F. Supp. 3d 315, 320 (E.D. La. 2021) (quoting *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990)). Under general maritime law, vessel owners owe a general duty of reasonable care under the circumstances to passengers on board. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959). Defendants themselves acknowledge that "the question of whether an alleged tortfeasor exercised reasonable care under the circumstances is determined by the factfinder," necessarily precluding a resolution on summary judgment in this case. (Doc. 106-1 at 26). Still, Defendants maintain that Plaintiff cannot meet his burden to establish a *prima facie* case of negligence. (*Id.* at 28).

However, as previously described, Plaintiff's own deposition testimony as well as reports and deposition testimony from his proffered expert, Dr. Andres, raise questions about whether the step was unreasonably slippery and whether the lack of

11

handrail created an unreasonably dangerous condition. (*See* Doc. 113-1; Doc. 113-10; Doc. 113-11). Again, Plaintiff need not ultimately prevail on these contentions to defeat the instant motion. It is sufficient that Plaintiff has submitted evidence that calls these material facts into question such that a reasonable jury could rule in Plaintiff's favor. Here, Plaintiff has done so, precluding summary judgment.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Final Summary Judgment on Plaintiff's Remaining Claims (Doc. 106)** is **DENIED.**

Baton Rouge, Louisiana, this 14th day of January, 2026

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**